UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Heidi Frison, on her own, behalf and on behalf of her minor children, Erica Frison and Keisha Frison,

Civ. File No. 00-2688 (PAM/JGL)

Plaintiffs,

v.

Officer Daniel J. Zebro, Sergeant Peck, Officer Scagle, Officer S. Bystrom, Officer Merrill, Jane Doe (whose true name is unknown), John Smith, Jim Jones (whose true name is unknown), all in their personal and official capacities, and the City of St. Paul,

Defendants.

---------------------------------------------------

**MEMORANDUM AND ORDER**

Heidi Frison and Erica Frison,

Civ. File No. 02-523 (PAM/JGL)

Plaintiffs,

v.

Officer Todd Feroni,

Defendant.

---

APR 05 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD APR 05 2002
DEPUTY CLERK

This matter is before the Court on Motions for Summary Judgment filed by Defendants in these consolidated actions. The claims raised by Plaintiffs in these two actions are identical, and thus the Court will discuss the separate Motions as one Motion.

**BACKGROUND**

This case arises from the execution of a search warrant at 1069 Greenbrier Street, St. Paul, Minnesota, on June 6, 2000. Plaintiffs brought suit against five named and three unnamed police officers who executed the search warrant and against the City of St. Paul. Two years later, Plaintiffs brought an identical lawsuit against another police officer who participated in the execution of the warrant.

Plaintiffs are Heidi Frison and two of her four children, Erica and Keisha Frison. During the time period in question, Erica was 17 and Keisha was 15. At the time of the execution of the search warrant, it appears as though Heidi Frison and her children were living at 1069 Greenbrier, although there is some dispute in this regard. For the purposes of the Motion, it is at least clear that at the time of the execution of the warrant, Heidi Frison had lived at 1069 Greenbrier in the recent past, was still closely connected to the property, spent time at the house on a regular basis, and held herself out as a resident of the home.

On March 16, 2000, the St. Paul Police FORCE unit received a complaint from a St. Paul resident concerning criminal activity occurring at 1069 Greenbrier, the home next door to the person making the complaint. According to the complainant, there were drug sales occurring at 1069 Greenbrier at all hours of the day. Moreover, the complainant told police

that she had seen bags of drugs and heard drug dealing conversations. The complainant also indicated that she had made similar complaints in the past to the police regarding the criminal activity at 1069 Greenbrier.

The St. Paul Police Department was not unfamiliar with 1069 Greenbrier. During the nine months Plaintiffs lived in or near 1069 Greenbrier, the police had been summoned to the house on 85 occasions. Heidi Frison acknowledged that she had called the police to the home several times, and admitted that the police knew her by name and knew that she was a resident of the house.

Officer Daniel Zebro of the St. Paul FORCE unit was assigned to investigate the March 16 complaint. On April 11, 2000, Officer Zebro went to the complainant's home to gather additional information and to discuss the situation at 1069 Greenbrier. After meeting with the complainant, Officer Zebro initiated surveillance of 1069 Greenbrier. While performing surveillance, Officer Zebro and a partner noted high traffic in and out of the home, with most people staying only briefly. In Officer Zebro's experience, this activity was consistent with the sale of illegal drugs.

Officer Zebro arranged for an informant to make a controlled drug purchase from 1069 Greenbrier on June 2, 2000. Officer Zebro himself saw the informant purchase a rock of crack cocaine, and noted a female acting as a "lookout" during the transaction. Based on all the facts and evidence gathered through the investigation, Officer Zebro applied for a

search warrant for the premises. The warrant was signed by Judge Johnson in Ramsey County on June 2, 2000.

The warrant was scheduled to be executed on the evening of June 6, 2000. Prior to the execution of the warrant, Officer Zebro and FORCE unit member (and Defendant in Civ. No. 02-523) Todd Feroni scouted the area around and near 1069 Greenbrier. Officer Zebro intended to set up reconnaissance from the complainant's home, located next door to 1069 Greenbrier. While at the complainant's door, the officers encountered Heidi Frison sitting outside of 1069 Greenbrier. She asked the two officers, who were not in police uniform, who they were. The officers told her that they were census workers. Ms. Frison then told the "census workers" that she lived at 1069 Greenbrier with her four children.

On the evening of June 6, 2000, fifteen members of the FORCE unit, dressed in riot gear, executed the search warrant at 1069 Greenbrier. On entering the property, police identified two individuals outside the home. One of the individuals was Heidi Frison's daughter, Erica Frison. The other individual was Earl Malone, the father of Erica's three-week-old infant. A police officer pointed a gun at Erica Frison and instructed her to get down on the ground. Erica complied, was handcuffed, and the police officer holstered his gun.

During the initial sweep of the house, two people were found inside: Erica's infant and a girl who was babysitting the infant. Heidi Frison was detained as she approached the house. She was subsequently handcuffed and seated in the living room with her daughter.

Heidi complained to police that the handcuffs were cutting off her circulation. She now claims that the officers refused to loosen the handcuffs and that as a result she suffered permanent injury to her right arm. Keisha Frison was not present at any time during the search on June 6, 2000.

During the search, officers recovered a substance that they suspected was crack cocaine. They also found U.S. mail addressed to Heidi Frison, seven cell phones, plastic baggies near the suspected crack cocaine and $653.00 in cash. Based on the initial findings of the search, Heidi Frison was arrested for operating a disorderly house in violation of Minn. Stat. § 609.33.[1] According to Plaintiffs' Memorandum, the substance found in the house was tested and was not crack cocaine. The charges against Heidi Frison were dropped.

Due to the condition of 1069 Greenbrier at the time of the execution of the search warrant, Sergeant John Peck notified the St. Paul housing inspector. The inspector evaluated the home and cited 26 separate violations, including the fact that there was no running water on the premises. As a result, the property was condemned and the inspector issued an order for the occupants to immediately vacate the house. Heidi Frison arranged with police to remove personal items from the home after the condemnation. She placed those items in storage, but failed to pay the storage fees and the items were seized by the storage company.

---

[1] This section provides that the operation of a disorderly house is a gross misdemeanor. A disorderly house is defined as a place in which the violation of controlled substances laws are habitual. Minn. Stat. § 609.33, subd. 1(4). Evidence of unlawful possession of a controlled substance is prima facie evidence of the existence of a disorderly house. Id. subd. 4.

Defendants seek summary judgment on all Counts of Plaintiffs' Complaints, contending that Plaintiffs have failed to show that genuine issues of fact remain to be resolved on any of the Counts. In the alternative, Defendants argue that they are entitled to qualified immunity on nearly every Count of the Complaints. Plaintiffs appear to concede that summary judgment is appropriate on six of the eleven Counts in the Complaint in Civ. No. 00-2688, but assert that genuine issues of fact remain as to five of the Counts, making summary judgment inappropriate. The Complaint in Civ. No. 02-523 contains four of these same five causes of action. Plaintiffs do not address Defendants' argument that Plaintiffs have failed to show the policy or custom required for imposition of liability on Defendant City of St. Paul. Thus, summary judgment in favor of the City is appropriate.

## DISCUSSION

### Summary Judgment

Summary judgment is proper if the evidence, viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of showing the absence of a genuine material fact. Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998). The moving party can also satisfy its burden by demonstrating to the court that the non-moving party is unable to prove an essential element of the claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Once this showing has been made by the moving party, the burden shifts to the non-moving party

to present a viable legal theory supported by the facts. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Holloway v. Pigman, 884 F.2d 365, 366 (8th Cir. 1989).

The substantive law identifies which facts are material. Liberty Lobby, 477 U.S. at 248. Only the disputes concerning facts that may "affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id. "Factual disputes that are irrelevant or unnecessary will not be counted." Id. Therefore, while "materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id.

**B. Qualified Immunity**

Qualified immunity shields Defendants from suit if Defendants reasonably believed that their conduct was lawful "in light of clearly established law and the information possessed" by Defendants at the time of the alleged incident. Smithson v. Aldrich, 235 F.3d 1058, 1061 (8th Cir. 2000) (citing Anderson v. Creighton, 483 U.S. 635, 641 (1987)). Qualified immunity is "immunity from suit rather than a mere defense to liability." Hunter v. Bryant, 502 U.S. 224, 227 (1991). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Hunter, 502 U.S. at 229 (quoting Malley v. Briggs, 475 U.S. 335, 343 (1986)).

Under Minnesota law, public officials are automatically entitled to official immunity when their duties require the exercise of discretion. Johnson v. Morris, 453 N.W.2d 31, 41-2

(Minn. 1990). Police officers generally are classified as discretionary officers entitled to immunity. Johnson, 453 N.W.2d at 42. Whether Defendants are entitled to qualified immunity will be discussed in detail below with respect to the remaining Counts of the Complaint to which qualified immunity applies.

**C. 42 U.S.C. § 1983**

Plaintiffs raise several claims under 42 U.S.C. § 1983. This statute prohibits someone acting under color of state law from depriving another of his or her "rights, privileges, or immunities secured by the Constitution and laws." There is no dispute that Defendants were acting under color of state law when they executed the search warrant at 1069 Greenbrier.

1. Count 2: unlawful searches and seizures

Count 2 challenges several actions of Defendants as unlawful searches and seizures under the Fourth Amendment, actionable through § 1983. According to Plaintiffs, their Fourth Amendment rights were violated because Defendants: (1) did not have probable cause to detain and search Plaintiffs; (2) did not have probable cause to arrest Heidi Frison; and (3) unreasonably seized Erica Frison's infant child from the premises.

a. Detention and search

Plaintiffs argue that Defendants lacked any reasonable grounds to detain and handcuff Heidi and Erica Frison. Specifically, Plaintiffs contend that because they were not inside the house at the time the officers executed the warrant, there was no cause to detain them or to

handcuff them. The evidence shows, however, that the officers did have cause to detain and to handcuff Heidi and Erica.

Routine detention of residents of a house while it is being searched for contraband pursuant to a valid warrant does not violate the Fourth Amendment. Michigan v. Summers, 452 U.S. 692, 705 (1981). In that case, the Supreme Court made clear that "detention represents only an incremental intrusion on personal liberty when the search of a home has been authorized by a valid warrant." Id. at 703. The existence of a valid search warrant provides an objective justification for a detention. Id.

Through the warrant process, a judicial officer makes the determination that police have presented the necessary information to support probable cause to believe that someone in the home is committing a crime. Id. The connection of an occupant to a home gives police an identifiable and certain basis for determining that suspicion of criminal activity justifies a detention of that occupant. Id. at 704. In addition, the interests of law enforcement in preventing flight, minimizing risk of harm to officers, and the ability to conduct an orderly search is balanced against the limited detention of an individual. Id. at 701. Thus, for Fourth Amendment purposes, "a valid warrant to search for contraband founded upon probable cause implicitly carries with it the limited authority to detain occupants of the premises while a proper search is being conducted." Id. at 704.

Plaintiffs argue that their challenge to their detention and handcuffing is not precluded by Summers. In Summers, the person detained was observed leaving the home moments

prior to the search and thus was clearly identifiable as an occupant. By contrast, in the instant case, Plaintiffs contend that neither Heidi nor Erica Frison were clearly identifiable as occupants at the time the warrant was executed. Plaintiffs also assert that Summers is inapposite to the handcuffing issue because Summers did not address the use of handcuffs in the detention process.

Plaintiffs' first argument fails because the record indicates that law enforcement had numerous contacts with the property and the occupants therein prior to the execution of the warrant and thus had ample reason to believe that Plaintiffs were in fact occupants of the premises. As noted above, there were at least 85 police calls to that address during the time Heidi Frison was connected to the house. On some of these calls, Heidi herself is listed as the complainant. Even if the officers did not recognize Heidi and Erica as occupants of the house, however, the officers did not act unreasonably in detaining them. The evidence shows that 1069 Greenbrier was the subject of surveillance in which the flow of individuals into and out of the house was observed and documented. As with most drug trafficking operations, a stream of individuals in and out of a property is a common occurrence. Thus, while executing a valid search warrant for a suspected drug house, it is more than reasonable for officers to detain individuals in and around the property being searched. Such a procedure ensures the officers' safety as well as the safety of the individuals in the area being searched.

Second, the handcuffing of those being detained is a process by which officers can effectively execute a valid warrant and control the environment surrounding the search.

Plaintiffs argue that the handcuffing of Erica and Heidi Frison was unreasonable. However, there is no evidence in the record that would indicate that the use of handcuffs in this situation was unreasonable. To survive summary judgment, Plaintiffs must do more than make bald assertions that Defendants' actions were unreasonable. They have failed to come forward with any evidence of unreasonableness, and therefore summary judgment is appropriate.

b. Heidi Frison's arrest

Plaintiffs argue that Defendants did not have probable cause to arrest Heidi Frison, and thus that her Fourth Amendment rights were violated. Probable cause for an arrest exists when the totality of the circumstances demonstrates that the arresting officer personally knows or has been reliably informed of sufficient facts to warrant a belief that a crime has been committed and the person to be arrested committed it. United States v. Reinholz, 245 F.3d 765, 778 (8th Cir.), cert. denied, 122 S. Ct. 281 (2001).

At the time of the arrest, police were executing a valid search warrant at 1069 Greenbrier for suspicion of drug trafficking operations. Police found what they suspected was crack cocaine and other indicia of drug distribution in the home. They also found mail addressed to Heidi Frison at the 1069 Greenbrier address. The facts and circumstances available to police officers while executing the search warrant were sufficient to lead a prudent person to believe that 1069 Greenbrier was a "disorderly house" within the meaning of Minn. Stat. § 609.33, and that Heidi Frison was responsible for such disorderly house.

In the alternative, Defendants have immunity on this claim even if there was not probable cause to arrest Heidi. The evidence shows that any mistaken belief as to the existence of probable cause was objectively reasonable. Smithson v. Aldrich, 235 F.3d 1058 (8th Cir. 2000) (finding qualified immunity where objectively reasonable but mistaken belief in existence of probable cause existed). The record indicates that the officers, at the time of arrest, reasonably believed Heidi Frison to be the owner or lessee of the property. Whether or not she was actually the owner or lessee of 1069 Greenbrier is not material in determining what the officers knew while executing the warrant. This factual information about her ownership interests in 1069 Greenbrier would be necessary to support the charges against her in a future prosecution but is not relevant to the analysis of the initial arrest.

c. Seizure of Erica Frison's infant

Minnesota Statute § 260C.175 provides that a peace officer is authorized to take a child into immediate custody when the child is found in (1) surroundings or conditions which endanger the child's health or welfare or (2) surroundings or conditions which a peace officer reasonably believes will endanger the child's health or welfare. Minn. Stat. § 260C.175, subd. 1(b)(2). Upon execution of the valid search warrant, police officers found Erica Frison's infant child inside the suspected drug house. Given the filthy living conditions of the home, it is reasonable for police officers to believe that the child's health or welfare was endangered. The police officers would have been remiss in their duties, as agents of the state, not to take protective action on behalf of the child, given the circumstances as they

found them at the time the warrant was executed. Therefore, the reasonable belief of police officers at the time of the execution of the warrant supports a finding that the officers' actions were authorized by law. In the alternative, Defendants are undoubtedly entitled to qualified immunity on this claim.

2. Count 3: excessive force

The test for determining whether police officers have violated the Fourth Amendment by using excessive force is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. Graham v. Connor, 490 U.S. 386, 396-97 (1989). The reasonableness of the conduct must be judged "from the perspective of a reasonable officer on the scene." Id. at 396. The Eighth Circuit has defined "excessive force" as an intentional abuse of official power which shocks the conscience or infringes on specific constitutional guarantees. New v. City of Minneapolis, 792 F.2d 724, 725-26 (8th Cir. 1986).

a. Pointing of gun at Erica Frison

Plaintiffs claim that the police officer pointing a gun at Erica Frison was excessive and violated Erica's Fourth Amendment rights. Plaintiffs concede that the Eighth Circuit has not addressed an case analogous to the instant matter. Plaintiffs instead rely on the Seventh Circuit case of Jacobs v. City of Chicago that recognizes that it is a violation of clearly established law, under both Seventh Circuit and Supreme Court precedent, to point a loaded weapon for an extended period of time at a person when there is no reason to believe that the

person is a dangerous criminal, committed any crime, or evaded or interfered with police officers. 215 F.3d 758, 774 (7th Cir. 2000). Plaintiffs' reliance on Jacobs is misplaced.

The record does not show that the weapon was pointed at Erica Frison for an extended period of time. The mere pointing of a gun does not per se violate the Fourth Amendment. See Edwards v. Giles, 51 F.3d 155 (8th Cir. 1995); Johnson v. Morris, 453 N.W.2d 31 (Minn. 1990); Hinojosa v. City of Terrell, Texas, 834 F.2d 1223 (5th Cir. 1988). Absent some evidence that the officer held a gun on Erica Frison for longer than reasonable, there is no Fourth Amendment violation.

Moreover, the officer in this case had a reason to believe that Erica Frison might be dangerous or might have committed a crime. The officer's reasonable belief is viewed by the circumstances as they existed at the time of the incident. Acting under the execution of a valid warrant, the police needed to ascertain the identity of the various individuals at the property and their respective involvement with suspected the drug house. Officer safety and the safety of the surrounding neighborhood necessitated the actions taken by police at the time the warrant was executed. Moreover, qualified immunity is a defense to excessive force claims so long as the conduct at issue does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

While the issue of whether or not excessive force used to effectuate an arrest is reasonable "is ordinarily a question of fact for the jury," Liston v. County of Riverside, 120

F.3d 965, 976 n.10 (9th Cir. 1997), there must be facts in the first instance to provide to a jury in order to a survive a summary judgment motion. Celotex Corp., 477 U.S. at 323-24. In this case, the only evidence is a mere allegation by one Plaintiff concerning the use of excessive force. Absent a factual basis to support the excessive force claim, summary judgment is appropriate.

b. Handcuffing of Plaintiffs

Erica and Heidi Frison were handcuffed during the execution of a valid search warrant. Plaintiffs contend that excessive force was used in the handcuffing of Erica and Heidi Frison. Heidi Frison claims lasting injuries from being handcuffed. Plaintiffs have failed to come forward with any evidence to show either that Heidi Frison brought her injuries to the attention of any officers at the scene or the station house, or that she ever requested or sought medical treatment for the claimed injuries. As to Erica Frison, there is absolutely no evidence that excessive force was used in handcuffing her, and she has not alleged that she suffered any injury. Plaintiffs have again failed to come forward with evidence to support their claim, and that claim must be dismissed.

3. Count 5: Due Process

Plaintiffs assert that Defendants violated their rights to due process under the Fifth and Fourteenth Amendments by taking their property and effectuating the condemnation of the property. Due process requires that a person have the opportunity to be heard "at a meaningful time and in a meaningful manner." Parratt v. Taylor, 451 U.S. 527, 540 (1981).

Moreover, "under federal law, a litigant asserting a deprivation of procedural due process must exhaust state remedies before such an allegation states a claim under § 1983." Wax 'N Works v. City of St. Paul, 213 F.3d 1016, 1019 (8th Cir. 2000).

In this case, there is no evidence that Plaintiffs challenged the city's determination regarding the condemnation of the property. The record indicates that a Notice of Condemnation was mailed to the owners of the property on June 7, 2000. The notice spelled out the nature of the violations found on the property along with information regarding the right to appeal such condemnation. Plaintiffs failed to appeal the condemnation status of the property. Because Plaintiffs failed to exhaust their state remedies, their challenge to the condemnation does not state a claim under § 1983.

Plaintiffs further claim that certain personal property was lost as a direct result of the condemnation of the house, and that the loss of this property constitutes a violation of their due process rights. By her own admission, Heidi Frison requested to remove personal belongings from the property. She then placed these personal belongings in storage unit which was ultimately seized by the storage company for non-payment of storage fees. Plaintiffs are hard-pressed to make an argument that the condemnation of the house is the cause of their failure to pay storage fees. Certainly if the house had not been condemned, Plaintiffs may not have placed their items in storage. However, Defendants did not require nor did they request Plaintiffs to remove personal belongings from the house. Removing the personal property was within the sole discretion and responsibility of Plaintiffs, as was the

placement of the property into a storage facility. Because Plaintiffs chose to remove personal belongings from the house and because they chose to place those same items in storage, it is Plaintiffs who must bear the responsibility to pay the storage facility for such services. Plaintiffs did not pay for such services and, as a result, they lost their property. Summary judgment is appropriate for Count 5.

4. Count 6: 18 U.S.C. § 912

18 U.S.C. § 912 provides that "whoever falsely assumes or pretends to be an officer or employee acting under the authority of the United states or any department, agency or office thereof, and acts as such, . . . shall be fined under this title or imprisoned not more than three years or both." There is no dispute that, prior to the execution of the search warrant, two police officers falsely told Heidi Frison that they were census workers. Thus, the two officers violated § 912.

Plaintiffs contend that the officers' violation of § 912 is actionable under 42 U.S.C. § 1983. According to Plaintiffs, § 1983 provides a private cause of action for any violation of federal law under color of state law. Plaintiffs advance an overly broad reading of § 1983. That section provides a cause of action to one who, under color of state law, has been deprived of a right, privilege, or immunity secured by the Constitution or by federal law. It does not provide a cause of action for every violation of federal law by a state actor.

In this case, the officers posing as census workers did not deprive Plaintiffs of any right, privilege, or immunity. Plaintiffs would stretch the language of § 912 to give citizens

a right to be free from anyone falsely pretending to be a government worker. Given that § 912 does not provide for a private right of action, it is clear that Congress did not intend the section to give rise to any "rights" on the part of the citizenry. Plaintiffs have failed to show that the violation of § 912 deprived them of any right, privilege, or immunity, and thus have failed to show a violation of § 1983.

**D. Count 11: Intentional Infliction of Emotional Distress**

To prove intentional infliction of emotional distress: (1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe. Hubbard v. United Press Int'l, 330 N.W.2d 428, 438-39 (Minn. 1983). The conduct at issue must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." Id. at 439 (quoting Haagenson v. Nat'l Farmers Union Prop. & Cas. Co., 277 N.W.2d 648, 652 n.3 (Minn. 1979)). Summary judgment is proper when a party does not meet the high standard of proof needed for an intentional infliction of emotional distress claim. Strauss v. Thorne, 490 N.W.2d 908, 913 (Minn. Ct. App. 1992) (citing Lee v. Metro. Airport Comm'n, 428 N.W.2d 815, 823 (Minn. Ct. App. 1988)).

Plaintiffs claim that they have met their burden to show all of the elements of the tort. Plaintiffs allege that the officers executing the search warrant acted outrageously by: (1) handcuffing Heidi so tightly to cause injury; (2) seizing Erica's infant son; (3) arresting Heidi without probable cause; and (4) deliberately dumping clothing and food over the

interior of the house in order to secure the condemnation of the premises. Defendants contend that even if these actions rise to the level of outrageous conduct, Plaintiffs have failed to show severe emotional distress, making summary judgment appropriate. Cafferty v. Garcia's of Scottsdale, 375 N.W.2d 850, 853 (Minn. Ct. App. 1985) (noting that trial court "has the obligation to determine whether the evidence offered to prove severe distress is sufficient to allow the claim to go to the jury").

As discussed above, there is little evidence to support Heidi's claims that the handcuffs caused any injury to her, the officers were acting within the requirements of the law by removing Erica's infant from the premises, and there was sufficient probable cause to arrest Heidi. Thus, these actions cannot be said to be "so atrocious" as to "pass[] the boundaries of decency," Hubbard, 33 N.W.2d at 439, and cannot constitute the basis for Plaintiff's intentional infliction claim. The only conduct of which Plaintiffs complain that might constitute outrageous conduct is Plaintiffs' allegation that the officers "trashed" the house, causing the house to be condemned. However, the evidence shows that the house had been visited by the housing inspector several times prior to June 6, 2000. Moreover, even if the officers caused the mess inside the house during the execution of the warrant – something that is difficult to believe given that the inspector found toilets full of feces and rotting food in the sink – it is undisputed that there was no running water in the home. That violation in and of itself is sufficient for the condemnation of the home. (See Morehead Aff. ¶ 12.) Plaintiffs have failed to show that the officers "arrang[ed]" for the condemnation of

1069 Greenbrier (Pls.' Opp'n Mem. at 17), and thus have not met their burden to show outrageous conduct for the purposes of their intentional infliction of emotional distress claim.

**CONCLUSION**

Defendants are entitled to summary judgment on all counts of Plaintiffs' Complaints in these consolidated matters. Accordingly, for the foregoing reasons, and upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment in Civ. No. 00-2688 (Clerk Doc. No. 28) is **GRANTED**; and

2. Defendant's Motion for Summary Judgment in Civ. No. 02-523 (Clerk Doc. No. 5) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 5, 2002

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995